First case today, number 241248, Karen Morales Posada, et al., versus Cultural Care, Inc. Will counsel for the appellant please come up and introduce yourself on the record to begin? Thank you. Alex Loomis for Appellant Cultural Care, Incorporated. With the court's permission, I'd like to reserve three minutes for rebuttal. You may. Your Honor, the district court erred in denying our motion to compel arbitration below for two reasons. First, the district court was wrong to find that we had waived the right to arbitration in this case. Waiver is not the same thing as forfeiture. It does not turn on nominal preservation by a time certain. It instead requires an intentional relinquishment of a known legal right beyond all reasonable doubt upon this issue as this court has recognized an FPE foundation and the total case. This is consistent with this court's traditional jurisprudence about requiring a high bar before finding waiver of arbitration. Let me ask you, your client had filed two motions to dismiss and the other motion, correct? One motion to dismiss, Your Honor. One motion and the other was the class action motion. It was a motion to strike opt-ins saying they were not properly joined to the case. So you would say that that doesn't waive the arbitration? That's what this court said in Pencer, in FPE Foundation, and in Hilty, Your Honor. And this is an easier case than all those three because the motion to dismiss was also on 12b1 grounds, not just 12b6, unlike those cases. And the reason why this matters is because this court has a ultimately, it's not based on the vibes of the case as to whether there's a waiver. This court considers five factors. Whether there was a counterclaim, there wasn't. Whether there was discovery, there wasn't. Whether we were close to trial, we weren't. Whether there was substantial invocation of the litigation process, but it's not just those words. And the parties were well into preparation of the lawsuit, we weren't. And in Hilty, this court held. What do we do about the fact that, just speaking personally, I have spent a fair amount of time on the merits in this particular litigation over the course of four years. So to be clear. Is that just irrelevant to whether you can then get a full-on evaluation of the merits of all of your claims, and then four years later say, well, actually, this was the wrong forum. Our view is you shouldn't have even been deciding any of those questions. They're really for an arbitrator. Well, so to be clear, that was the facts in Pencer, FPE, and- Is it four years? It was. So it wasn't. Hilty, I believe, was three years. And we asserted this roughly, I think, at three years as well. So the same timeline. And in Hilty, had they had merits passed on by two different courts of appeals rulings? So no one district court. And to be clear, one court of appeals, one district court. But also, respectfully, Your Honor, I'm not- I confess- No, we had a- First, there was preemption, correct? So- Was that a different- So, I'm sorry, Your Honor. That's a different case. There's the Caprone case. And Your Honor has spent time with that. And that is a separate case. And we are not saying that that case is over and that case is done. And so I acknowledge that point. But on the prior appeal in this case, Your Honor, I confess I don't know what Your Honor did during the case behind closed doors. But what this court ultimately decided was jurisdiction. But the request, because you made a request that pendant jurisdiction be asserted, you requested that we resolve all the merits claims? To the extent they were inextricably intertwined, and we said they were inextricably intertwined as well. But you didn't have to request that ruling? Well, and- That was a completely optional request. And in Pencer and Hilty and FPE Foundation, the past cases, we could not have construed that to be inconsistent with our right to arbitrate in this instance. Now, Pencer was pre-Morgan? Pencer was pre-Morgan, but the court's analysis, the holding, that it is not inconsistent with the right to arbitrate or substantial invocation of litigation resources. In Pencer, was there a request for resolution of all the merits claims? No, it was all but two. So is there any case in any circuit in which a party has requested dismissal of all the claims on the merits, taken that all the way through appeal, and then, at the end of that, asked for arbitration? So through the appeal, no, neither side has dealt with an interlocutory appeal in this instance. In Hilty and in FPE Foundation, it was all of the claims, and making a distinction between the types of claims, if it's all the claims or all the claims of one or two, is not something that's suggested as being relevant to any of the past cases, and also would ultimately create incentives for gamesmanship in this case. Obviously, if this were the rule announced in advance, we would have structured our motion differently, but we acted in accordance with this court's precedents, which we had the right to rely on. And it's not just this court's arbitration precedents, it's also Rules 12 and 8. Rule 8 lists arbitration alongside other contractual defenses that need only be asserted in the answer, and Rule 12 creates an exception to that for only a set number of defenses, including venue, but arbitration is not the same as venue. But Rule 8 doesn't mention any of the other factors in our waiver test, which you concede still apply. That's true. So Rule 8 doesn't help us one way or the other in figuring out when. The idea is that under our test, you can impliedly waive, correct? Correct. And so the only question is, did you impliedly waive? And under this court's precedent, there's nothing that looks remotely like this case where the party had not reached the answer yet, and Hilty says there was a strong presumption against waiver before you reached the answer. And this court has previously said- When you say hadn't reached the answer, just help me with that. Sorry? When you say we hadn't reached the answer, what do you mean by that? We asserted the right to arbitrate and announced our intention to move to compel arbitrate before we filed the answer. We filed the answer and then pursuant to a set briefing schedule, immediately afterwards, we did move to compel arbitration. So we did announce our intention and proceed to prosecute our arbitration rights before the answer was even filed in this case. And it was also right after the motion to strike the opt-ins was decided, and that's relevant too because our contention in that motion was that the opt-ins were not properly joined to the case. We couldn't talk out of both sides of our mouth and say that the case had to proceed to arbitration until the subject matter jurisdiction was resolved with the court and also, at least for the opt-ins, it was decided that they were properly joined to the case. And it's not just that jurisprudence. I don't want to take, unless my colleagues want more time on waiver, I'd like you to get to the merits. Of course, Your Honor. So on the merits, first, the district court erred in deciding the merits of the arbitration clause at all because there is a delegation provision here. It's not within the contract itself, but the parties did agree to arbitrate before the arbitrational tribunals of Switzerland. There is no dispute that there are only a set number of arbitrational tribunals in Switzerland and all of the arbitrational tribunals of Switzerland have the same rules that exist in Bosse, in AWUA, and in Berg. Wouldn't you have to be a third-party beneficiary of the delegation clause? Not to take advantage of the delegation provision, Your Honor. Why not? Because this court in Berg dealt with that exact same objection where there was an assumption question and held that if there is an incorporation, if you agree to arbitrate before an arbitral tribunal. But you're non-signatory to any of the agreements. And that was true in Berg as well, Your Honor, and there was an assumption issue there instead of a third-party beneficiary or equitable estoppel issue. And that's also how the Second Circuit interpreted the Berg case when assessing this court's precedent. And it also follows from the Supreme Court's precedence, like GE power conversion, where the court has said that who may arbitrate is an issue that is part of the arbitrability analysis, which means that it can be delegated. It does not go to contract formation. How could it be delegated with respect to a third party, a non-signatory? I just don't even understand it. The question we're trying to figure out is, was there a delegation with respect to the non-signatory? Well, this test is whether there is a prima facie agreement that plaintiffs signed. And that actually is true. There is a prima facie agreement that they signed. And so the only question then is, are we allowed to invoke this arbitration right? For that to be true, you'd have to be a third-party beneficiary, right? No. Yes, but it's for the arbitrator to decide if we are the third-party beneficiary. This was the court's holding. But you didn't reach any agreement with the other party here. But it's plaintiffs who agreed to submit the disputes of who agreed to submit arbitrability questions to the arbitrator. So Your Honor's question would have, I think, more force, if I may, if it were plaintiffs who were not parties to this contract. I think that argument would have a little bit more force in that instance. But in this case, they agreed to submit this. But they didn't agree with you to do that. Again, that was true in Berg as well, Your Honor. And it's part of the same arbitrability analysis. But if you don't accept that, Your Honor, I think we still win on that. Berg was not a third-party that was trying to enforce. It was, no, not a third-party beneficiary. No, it was under assumption, Your Honor. Yes. So it was the president and CEO of the company. The company had the right to enforce the arbitration agreement. There was a non-assignment clause in the contract. And then in bankruptcy proceedings, the foreign bankruptcy court assigned the right to enforce the arbitration agreement to the former officers of the company. Now, it is a distinction, Your Honor. But it's not a relevant distinction, if I may. Because in Arthur Anderson, when the court's listing the different circumstances under which third parties may enforce contracts that they are not party to, they list assumption right next to third-party beneficiary and estoppel, the same arguments that we are raising here. But I recognize, Your Honor, if there's concern with this, I'm not afraid of the merits of this issue. I think we are a third-party beneficiary of this contract. At minimum, paragraph 14 of the contract, which grants a release to affiliates of culture of ICL, in this instance, and there's no meaningful dispute that we qualify as an affiliate. We are managing this program in- Is it irrelevant that the arbitration agreement, wouldn't you have to be a third-party beneficiary of the arbitration agreement? That's not how, so, well, it is the agreement as referring to the contract as a whole, yes, but not the particular clause, Your Honor. There's a separate inquiry as to whether or not this is covered by the scope of the arbitral clause. That's not what I'm asking. I'm asking, for purposes, if your point about Berg doesn't carry the day, and the question is, are you entitled to assert and invoke the arbitration clause at all? You seem to be saying that the right thing to look at is, is there any provision of the contract that makes you a third-party beneficiary as to that provision? And I don't understand why that logically makes any sense. If the thing you're trying to invoke in the agreement is the arbitration agreement itself, and we often treat that as its own agreement, so why don't you, consistent with Hogan, have to be a third-party beneficiary of that agreement? So, to be clear, that's not how this Court's analysis has gone. It's also under operative Swiss law, and I will get to first principles in a moment,  But we're going to have the same issue as whether we get to Swiss law, because then it's a question of, can you invoke the choice of law provision as a non-signatory? And so before we get to that, imagine federal common law is the determinative question, or maybe the form state law, which you don't identify as having any distinction as to the need to show a certain degree of clarity as a third-party beneficiary. Explain to me why the relevant question isn't, are you a third-party beneficiary of the arbitration agreement? Because ultimately they fold into the same issue, Your Honor. Because at least, so if you'll indulge me, to the extent that we are a third-party beneficiary of a release, and the release, paragraph 14, gives us rights under the contract, and then if the arbitration clause says that any rights, let's say for a moment that it covered any rights under the arbitration agreement, then obviously you would have to look through the rest of the arbitration agreement and say, is this a right under the arbitration agreement? As to a dispute concerning the release, but that's not what you're disputing. Well, we do assert release as a defense in this case, Your Honor, it's in the answer, and it is something that would come up, presumably, if this will be in arbitration or in litigation in this case. But I thought your position here is that every claim gets to be arbitrated, am I misunderstanding it? Well, it's every claim, they're asserting, and worse, we have release as a defense to all the claims that are being raised, but we're a third-party beneficiary. Is that the only issue you're contending should be arbitrated, whether the release issue? No, it's all of the claims. Right, so with respect to all of your defenses, you're claiming all of those defenses are subject to arbitration as to all the claims, isn't that right? Well, yes, and there are other, and I see that I'm out of time, but I want to make sure that I fully answer this concern with your Honor's indulgence. So to be clear, if the court were to take even that narrower view of the issue, which again, I don't think is appropriate under this court's precedence, it still wouldn't matter because there are other parts of the contract that also specify that the au pairs have duties to us and obligations to us as the entity that's... If we didn't agree that those created a clear enough, if we didn't agree those created a third-party beneficiary status for you, and only the release did, what follows from that on your view? Well, so if only the release did, I would still argue that we would still win under the arbitration clause itself because the arbitration clause would cover any claims arising out of the relationship. So I think that anybody who has, would benefit from that, who claims that would fall, that arise out of the party's relationship, we would be, because those claims against us fit within that category, we would also qualify as a third-party beneficiary of the arbitration clause. As to the arbitration of defenses independent of the defensive release? Yes, I think that is true. What's the logic of that? The logic of that is that the arbitration agreement covers all claims in a large category. So does that mean then that in this, so you can get in, let's say there's just a provision that says you have this benefit, you're a third-party beneficiary for this, you're not even arbitrating that issue, that gets you in to be able to enforce the arbitration clause itself for any purpose? Well, it gets you past the standing inquiry as to whether or not we can enforce this, but it doesn't get to the question about whether it's within the scope of the arbitration clause, and that's what would... So I guess, last question on this, that's where I'm puzzled. Since the relevant thing, as I read Hogan, is are you a third-party beneficiary of the arbitration agreement? And since the test for scope, when you are a party to the agreement, or even somebody has been decided they can assert it, is different than the test for determining whether you're a third-party beneficiary of an agreement, because the scope is liberally construed in favor of the one, the third-party beneficiary, you have to... So it's clear and definite that you're a third-party beneficiary. I'm not following why you think the relevant question is the scope question, as opposed to whether the language of the arbitration agreement makes it clear that you can enforce it. So respectfully, I think that this has to be right, because this court has found that third parties can enforce an arbitration agreement under estoppel theories without engaging in any third-party beneficiary analysis of the arbitration agreement itself. There is no argument that there is... So in Riba Donera, this court held that a party was equitably estopped from avoiding the arbitration clause in claiming that there was a third-party problem to enforcing it. There's no third-party beneficiary analysis in Riba Donera. There is no argument that the party is equitably estopped specifically from the arbitration clause itself. But estoppel would seem to come before the question of whether you were a third-party beneficiary of the agreement. That's just about your own litigation conduct. I'm afraid I don't quite follow the response there, Your Honor. If it is the case that somebody has standing to enforce an arbitration agreement based on the fact that there is estoppel concerns for the entirety of the contract, then I think that illustrates that there doesn't need to be a separate showing that they are a third-party beneficiary of the contract itself, which is why in this court's estoppel cases, where we cite plenty in our blue brief, there is not a separate analysis, or there isn't always a separate analysis of whether, in fact, they are a third-party beneficiary before deciding whether they are entitled to a sue under equitable estoppel. Thank you, Your Honor. Thank you, Counsel. Will attorneys for Morales, Posada, et al. please come up and introduce yourself on the record to begin? Good afternoon. David Seligman from Towards Justice for Plaintiffs at Police. First, I'd like to extend my gratitude to the court for postponing oral argument from December until now. We appreciate it. As this court has said, litigation puts parties to hard choices. Cultural care made its choice, and it cannot now make a different one. You can imagine what the conversation may have been like between Cultural Care's counsel and Cultural Care after Cultural Care was served with this lawsuit on behalf of thousands of minimum wage child care workers spread across the world. They may have said, we've got a couple of options. We can pursue an argument under Yearsley that these claims cannot be brought. We can assert the argument that these claims are preempted. We can assert that plaintiffs have not plausibly pled that we're an employer. We can assert those arguments in the district court. And even if we lose in the district court, we might also have an argument that we can get appellate jurisdiction for an interlocutory appeal. And that might push off the case for months or even years before we have to face discovery. In the meantime, there may be a regulatory fix that would prevent us from being subject to these claims at all. There's another path here, and that would involve invoking an arbitration clause that might exist in contracts between ICL, a distinct third-party corporate entity based in Switzerland, and some of the class members. The problems that they may have seen with that path is that that wouldn't necessarily have caused the claims to go away entirely. They may have actually had to arbitrate the claims in Switzerland. And additionally, it would require them to argue that they've got a relationship with this distinct corporate entity ICL that they have spent years trying to contractually distance themselves from. Cultural Care chose the first path. Not just that. It didn't just make the arguments that the years they applied. It also made the argument that the claim should be dismissed on the merits, again, based on preemption and failure to state a claim. And not just that. It sought interlocutory appeal, which called upon the resources of this court, and then ultimately, the United States government to weigh in on that question. And not just that. In the meantime, Cultural Care moved to strike hundreds of opt-ins, hundreds of putative class members who had joined this case. They cite HILDE and FPE, as if I follow, as the two precedents that they say, even if you put aside PENSA, I think it's how you say it, as the two cases that support their position that there's no waiver. What do you say about those two precedents? I mean, disagree. So first of all, FPE does not involve a situation in which there is, as I understand it, a motion to dismiss the entire case and then additional litigation, especially in the appellate court, or anything like a motion to strike opt-ins. Neither that case nor HILDE involves anything like the several years of delay. I want to also focus on HILDE, which they focus on in their briefing. I mean, HILDE involved a case where, first, the plaintiffs in that case were put on notice and the court was put on notice just a couple of months after the litigation was filed that arbitration may apply. Arbitration was asserted in an answer right after the filing of the case. Additionally, a really important aspect of HILDE was that HILDE was litigated before the Supreme Court decided a case called Prima Paint. And Prima Paint fundamentally changed the arbitration analysis in HILDE because the plaintiffs in that case had argued that the contract containing the arbitration clause was unenforceable. And prior to Prima Paint, if that had been the case, then there was a good argument that the arbitration clause itself was not enforceable. The defendants in HILDE's discovery focused in large part on the enforceability of the contract containing the arbitration provision. Additionally, in HILDE, not all of the claims in that case were subject to arbitration. And so some of them were going to proceed in court, were going to proceed in court no matter what. HILDE seems fundamentally different. I mean, frankly, there's nothing remotely like this case anywhere across the country. Not before Morgan and certainly not after Morgan. Just help me with the timing of the litigation. The answer's filed when relative to the yearsly defense being asserted, et cetera. The answer, it had not been filed, right? Because that's as part of a, that was, yearsly was asserted as part of a motion to dismiss under Rule 12. I do want to respond to Your Honor's question on the Rule 8 and Rule 12 point. Just so I get, the answer's then filed, what, after our ruling on the yearsly issue? Yes. After the case comes back down. I think that it's important to clarify that the Rule 8 and Rule 12 question, whether under Rule 8, cultural care could, in theory, move to compel arbitration at this stage in the litigation, is a different analysis entirely from the contract waiver analysis. Whether as a matter of contract law, cultural care had waived its right to assert claims under the purported contract. Just to highlight how distinctive this case is from any of the cases in which courts have found that there is not waiver. I do, especially post-Morgan, you know, they, you know, for example, spend, they have a footnote in their reply brief highlighting several cases in which they say that the court, in which they say that the courts found waiver, but things had occurred that were unlike anything that happened in this case. As just one example, one of those cases is an 8th Circuit case that involves, it's the In Re Pawn Shop litigation. And in that case, the 8th Circuit found that there had been waiver after the defendants moved to compel arbitration three months after a pretrial conference and after a motion to dismiss hearing before the district court had even decided on the motion to dismiss. So the motion to compel arbitration just comes a couple of months after the case is filed and there hadn't even been a decision on the motion to dismiss. Importantly, that motion to dismiss also included purported jurisdictional arguments, standing and merits arguments. And the 8th Circuit there, post-Morgan, had no trouble concluding that the defendants had waived their right to compel arbitration by filing the motion to dismiss. Unless my colleagues have more questions on waiver, why don't you turn to the merits?  I think the one, before we move on to the substantive legal question of whether cultural care is a third-party beneficiary or has the, or plaintiffs are equitably estopped, I do want to pause for a moment on the delegation point. I agree, Your Honor, that in order to compel arbitration of the arbitrability issue under the delegation clause, cultural care must show that it has the authority to do so. But I don't think the court even needs to get there. There is nothing like a clear and unmistakable delegation of questions of arbitrability to an arbitrator here. In this case, unlike in other cases, and there are cases where courts have found that language in an arbitration agreement saying that an arbitration is governed, for example, by, or should be, an arbitration should be heard before the American Arbitration Association pursuant to the American Arbitration Association's rules. In this case, all the arbitration agreement says is that it should, is that the claims should be subject to the jurisdiction of the arbitral tribunals of Switzerland. Then the cultural care expects the signatories here. What follows for you if we conclude you're right on this point? You move immediately to, assuming that you don't resolve the issue on waiver, if there's no delegation, then the question is for the court to decide of whether cultural care has the authority to enforce the arbitration. But we're still going to have the third party beneficiary issue. Of course, yes. But, but. So is that analysis going to be any different than it would be as to the delegation clause? It would not be. Why don't you just get to that issue then.  Yeah, so the, on the, on the third party beneficiary point, first of all, we agree with that, that under the first, under First Circuit case law, including Hogan, the, the special clarity that cultural care would have to show in order to compel arbitration, compel arbitration here as a third party beneficiary would include pointing to language of the arbitration clause that would, that would purport to allow that. There's nothing like that here. But even if that were not the law, cultural care. So just assuming it is, how do you reconcile, if the reconciliation is necessary, the case they're relying on, Berg, with the analysis that you're suggesting we should do, that you're drawing from Hogan? I, I take Berg, and maybe, maybe I'm, Berg, I think Berg to go to the question of whether the third, non-signatory enforcement can be delegated to an arbitrator, which is preliminary to the question of whether in look, in examining whether you are a third party beneficiary, you look for. And did that issue just not arise in Berg? I, I, as I recall, Berg was not a third party beneficiary. No, but it was not the party that signed, correct? It was not the party that signed. So, I think, I take the force of their point to be of a non-signatory, various ways in which non-signatories could be the party that gets to enforce the agreement despite being a non-signatory. Yes. Is there any reason that in thinking about whether a non-signatory can invoke an arbitration clause, we should treat third party beneficiaries different than others? Well, one might be it has to be clear and definite, but I think the force of their point, if I get it, is that, that point aside, you don't have this preliminary analysis of, are you the party that gets to invoke it? You start with the terms of the arbitration agreement, and then you look at scope, things like that. Whereas, I think the way you're asking us to look at it is, no, that's wrong. The first question is, can you invoke it at all? Can you invoke it at all? Do you have the authority to invoke it at all? So, did Berg do it that way? On the delegation point, Berg does not engage with the question of whether... And did they find no delegation or delegation? Berg does appear to delegate to the arbitrator the question of whether this non-signatory may be bound by the arbitration agreement. And was there an argument in that case that it addressed as to whether that was inappropriate because of the threshold question? I do not read, and that's a case from the 1980s, I don't read that case as even raising that argument. Again, I think that in order to get there, you would first need to find that there was, in fact, a clear and unmistakable delegation. And in this case, their purported delegation clause reads like a riddle, where you have to figure out first what the arbitration tribunals of Switzerland are, and then figure out, well, some of them, one of them is for sports arbitrations. That probably doesn't apply to us. So let me look at the other two. I mean, it's like saying, you know, it's like having an arbitration clause that says something like... Well, let me make it simple. If the issue was the scope, so it was ILC and your client, and the question is, you know, does the dispute... We would just look at that arising out of the relationship language, right? And then if they were a signatory to it, somehow, they say, once you get to the scope issue, that language is fairly capacious. Now, that may be right, that may be wrong, but I take it you're saying we never get to that question. That's correct. Because the only way we should ever be construing that language is through the lens of clear and definite creation of a third-party beneficiary. Is that right? Or that they have a right under a doctrine like equitable estoppel to enforce... I'm sorry, with respect to the claim of invocation based on third-party beneficiary status. Yes, but before we look at the scope question, the scope question, the Supreme Court has told us that there is a... And what's your authority for that being the order of operations? So I take it you're saying Berg just doesn't pass on that question about the order of operations? Yeah, Berg is... I read Berg, and I think that the parties have discussed Berg on a somewhat different issue of whether, if there is a clear and unmistakable delegation, then a third-party can... Or whether the threshold issue of whether a third-party can enforce the arbitration provision is delegated without the third-party first having to show that they have the authority to enforce the delegation provision, right? So we disagree with cultural care on that point. A delegation provision is itself a... And your position is Berg just doesn't answer the question? Yes. And then a separate question, the separate question of the scope of a third-party beneficiary and its relationship, doctrine and its relationship to the scope issue in the arbitration clause is not, as I recall it, at issue in Berg. But the... So I agree absolutely with Your Honor that the scope analysis is very different from the question of whether cultural care has the authority to enforce the arbitration provision. And what do you make of their argument about them being a third-party beneficiary of the release provision? And let's assume they're right about that. For purpose of this point, what then follows from that with respect to their ability to enforce the arbitration clause with respect to arbitration over their defense of release? I think that the language of the release is an awfully thin reed to rely on to determine that cultural care is a third-party beneficiary under either the special clarity standard or under the Swiss law standard. The language of the release... I think I'm asking a different question. I would assume that it is enough under the special clarity standard or Swiss law to make them a third-party beneficiary of the release clause. That's not what we're here for today. The question is, can they compel arbitration? As I understand it, they're suggesting at least any dispute involving that release clause, they can compel arbitration. So what is your answer to the contention that if they are a third-party beneficiary under the special clarity standard of the release clause, that means they have the right to invoke the arbitration clause as to any issue concerning the defense of release? If that were the case, I'd disagree that they would have the authority to invoke the arbitration clause as a third-party beneficiary because that is not what either the special clarity standard or Swiss law require, which is specific language regarding a third-party's right to enforce the contractual right at issue, and here that is the right to compel arbitration. I'll say that I think that reading the language of the release helps to reinforce why this must be the case. The release says that the signatory agrees to irrevocably, unconditionally, and fully remise release at forever discharge ICL and its affiliates and said person's respective officers, directors, successors, assigns, attorneys, insurance companies, agents, employees, and affiliates or others to the extent acting or purporting to act on behalf of that person. That language, immensely broad language, if that were interpreted to make all of those parties a third-party beneficiary, it's hard to see who under the sun wouldn't be able to enforce the arbitration provision at issue here, and this language is not so different from standard language. Is it possible that last clause is narrowing? I mean narrowing in so far as you'd have to have some relationship with ICL. It doesn't say purporting to act on behalf of? Purporting to act on behalf of the aforementioned person, so anybody else, so any of those people, right, so the insurance agents, employees, affiliates. So it's modifying only or others, it's not modifying the whole list is what you're saying? It's saying that or others, or others purporting to act on behalf of any of those other people, but those other people include insurance agents, attorneys, employees. What limitations do you put on the arbitration clause, the phrase in there, arising out of the relationship consistent with your present argument? So first of all, I'll acknowledge that if this is a question about scope, we have a tougher argument. It's not a question about scope, right, it's a question about the authority to enforce the provision, and that's a very different burden. So you think it's only scope? If it were a scope question, or whether it's claims? I'm sorry, you think that phrase is referring only to scope? I do think that that refers to scope and not to who has the authority to enforce the arbitration provision. I mean, even if it were just scope analysis, I don't read it as broadly as cultural care would suggest. First of all, I want to highlight, this is basically the same language as Hogan, I think almost word for word, right? And Hogan thought that language like this effectively foreclosed the possibility that the non-signatory was a third-party beneficiary. But I do think that the way that I would read this language in paragraph 15 is to say that there are any claims is, you know, the first provision is, you know, any claim dispute or proceeding arising out of the relationship is a somewhat, it's a narrower provision referring to claims related to the contract, right? And then the second phrase is- The thing is, it just says arising out of the relationship rather than the agreement. It does, but the way that the arbitration clause is crafted, it suggests to me that the second provision is meant to be broader and saying, or any claim, which in contract tort or otherwise- So that's like a bossy-like claim where it has nothing to do with the agreement itself, it's just the parties had some- It's just that- Just two people are still- Yes. Two people, and so they're having some dispute. Yes. That's right. And then it says, but that has to be between the parties. But the first one says, or anything arising out of the relationship. And I take it, the consequence of this construction of the clause is why, if you apply the special clarity test, there's no way to read that arising out of the relationship language as being clear enough to give the right of a non-signatory to enforce it. Not even close. Unless the court has further questions, we're happy to rest on our briefs. Thank you, counsel. Will Attorney Loomis please come up and reintroduce yourself on the record to begin? You have a three-minute rebuttal. Thank you, Your Honor. Alex Loomis for Appellant Cultural Care, Incorporated. First point on the delegation. Berg squarely did address the argument that a third party, did address the argument that the delegability question was something that would have to bear on the third part of the fact that it was a third party to the contract who was seeking to invoke the delegation provision. This is at page 472, where Apollo argued that DICO could not even invoke the arbitration agreement because there was no valid assignment, and the court responded, we cannot reach that because that goes to arbitrability, which was delegated. That was squarely decided, which is why the Second Circuit has interpreted Berg as squarely deciding that issue. If you don't agree with... There's a difference between arguing that you can't enforce it because there's no valid assignment, a question the delegation clause controls, and the argument that you can't address whether the delegation clause controls the question of whether there's assignment until you determine as a non-signatory we're entitled to invoke the delegation clause. It's that latter question that we want to know, did Berg address? So I think it's folded within that, that Berg's holding, that this court can review for itself. More directly, did Berg address that antecedent question? So not as phrased by the court, but to be clear, it would be impossible to have anybody be the third party beneficiary of the delegation clause under the AAA rules or the ICC rules. The delegation provision is within the rules of the ICC and within the rules of the AAA. No court has ever engaged in this analysis. This is an argument that plaintiffs are trying to raise that would vitiate the AAA and ICC jurisprudence in this context. I would also note as well that this court has asked a lot of questions about... Well, it would be more persuasive that that were true if you had a case showing that it comes out the other way. So all of the cases that have ever been decided under the AAA and ICC would have to come out the other way if this argument were right. Because nobody is a beneficiary of the ICC rules, nobody's a beneficiary of the AAA rules. And every court, every time there has been a delegation, assume for the moment that this is clear enough in specifying the forum, every time that has happened, that has been shown to be a clear and unmistakable delegation in the case. As to waiver, and even on the merits I'd note, we still have our equitable estoppel argument. Their argument about how we can separate the third party beneficiary of a defense to their claims from the claims itself, I don't think those two are separable. A defense interlinks with the claims itself. And I would point this court as well to this court's holding on Uadani and Hogan, which all differentiated between the scope of the agreement was sufficient, actually limited the claims that could be asserted in arbitration from the question of whether they were third party beneficiary. Finally returning to where my friend started in his argument about how we had a choice when the complaint was filed, how we had to make a decision early on as to what claims we were going to bring. That is not what this court held in prior cases. FPE Foundation did hold that a motion to dismiss is, quote, a far cry from being a waiver of litigation activity. And in this instance, we had 12B1 arguments, and we could not ask the court to compel arbitration before the court decided whether it had jurisdiction over the case and whether the parties were properly joined in the case. And so the only question is- Why don't you file those motions along, there's no impediment that you file the motion to arbitrate along with those motions at that particular time. And the court maybe hold it to the bay and still, but you could have filed it. And to be clear, Your Honor, but that would not have affected the fact that this court would have still had to resolve at the district court, would have had to resolve the jurisdictional point first. It would have, it would have affected whether we had to take on the pendant jurisdiction claim. Well, this court didn't take on- No, it would have affected whether we had to take on the pendant jurisdiction claim, not rule on the merits of the pendant claims. But it would have affected whether we had to address the pendant jurisdiction issue, wouldn't it? So, I guess this court- Because if the claim was all of those things were to be arbitrated, in fact, even the immunity question- No, we wouldn't- No, this court would have to decide the immunity question. Absolutely. It depends if it's jurisdictional in an Article III sense. Well, we, no, we said it would, I think it is jurisdictional in a matter of some, the district court cannot exercise jurisdiction even if there's no statutory jurisdiction. That leads us to the question of whether we had to take on the question of whether to treat as inextricably linked the merits questions. If we knew that there was a pending arbitration compulsion motion, there would have been no reason for us to address that issue. So, and I, and at this point then, Your Honor, I have to pivot back to the test for waiver being our intention to relinquish a known legal right and the legal standard that this court has put forward for what evidence is that intention. It's not inconsistent with the right to arbitrate to pursue motion to dismiss arguments that at the district court, at least, would have been held to not be at odds with- Let me go back to my question.  You haven't squarely answered it. I'm sorry, Your Honor. There's, there's no impediment and I think in my years as a district judge, I saw it many times. There was a motion to dismiss. There could be a 12B6, but most of the time, you'd see the motion to compel arbitration together. You raise everything or, you know, or if there's an answer, you can answer, you know, or the defense is arbitration, but, you know, it's something you can, you know, you know, inform the court immediately, you know, and here it wasn't, so you could have, you could have done it, not, it wasn't done clearly until, until after the appeal, but the answer is it could have been done, correct? Correct. And to be clear, to explain why we didn't do it, which is, I think, laid out in the reply brief, we emphasize the expense and complications in the, actually, the greater degree to which you need to invoke the court's jurisdiction to fully brief a motion to compel arbitration in a case like this. It was enormously expensive to subject ourselves to fact discovery as to, and to put forward fact witnesses who were deposed in this case. We put forward foreign law declarations, and it's not something that this court has ever required before in its jurisprudence or suggested might be required, that we have to pursue both angles, full steams ahead, both barrels blasting at the same time. Instead, it's acceptable to resolve these threshold pleadings-based issues before we do so. And in this instance, I would point this court, if you are looking for precedent, because of course you should be, I would point this court to this court's holding in Marie, where Judge Lynch, writing for the court, held that even when a case is first filed in the district court, if the case is stayed pending an EEOC investigation of the Title VII claims, the defendant is not required to rush to court and start screaming about its right to arbitrate when there's no opportunity to do anything about that, because the proceedings are stayed and the district court loses jurisdiction, which is true here as well when we filed the notice of appeal, it lost jurisdiction in that case. And the reason why this court held that you should not be forced to assert your arbitration rights in that instance is because it's expensive. It's inconsistent with the notion of arbitration to say that you should be forced to assert your rights and litigate extensively before, and the district court doesn't even have the power to rule on this issue, before resolving certain threshold issues. And I respect that this court might disagree with this interpretation. I can respect the court that district court judges might in future want to set out scheduling orders that say that if you want to assert arbitration, I really need you to assert your rights before a time certain. That's what happened in the Gutierrez case out of the 11th Circuit, but that's not what happened here. And I'll wrap up in just a moment, Your Honor. That is not what happened here. And all of the precedents that this court has ever issued have suggested that absent discovery or other procedures that are inconsistent with the right to arbitrate, simple motions to dismiss, and motions to prevent the joinder of parties, and challenges to jurisdiction, at least in this circuit, do not come close to establishing a right to arbitrate. And our only point is that at least creates sufficient doubt on the issue, and all doubts have to be resolved against waiver. I just have one last thing. I just want to make sure you get a chance to answer this. As I read your brief, you are not making an argument that that arising out of the relationship language in and of itself meets the special clarity standard for creating third-party beneficiary status in your client. Is that right? It's not something that was argued in the brief. Okay. Thank you. Thank you, Your Honor. That concludes arguments in this case.